Syllabus.

# Richmond.

## GOODE v. BRYANT AND OTHERS.

### March 11, 1915.

### Reheard January 13, 1916.

1. VENDOR AND PURCHASER—*Assumption of Lien—Warranty—Estoppel—Sale Under Deed of Trust.*—As between the parties, a vendee who assumes the payment of a debt secured by deed of trust on the land sold as a part of the purchase price, becomes the primary debtor, and if the land is sold under the deed of trust for default in the payment of the debt secured, the vendor is not estopped by his warranty of title from becoming the purchaser at the trustee's sale. The doctrine of estoppel does not apply to such a case, and the fact that the assumption of the debt was verbal is immaterial, as the agreement to assume is just as binding and effective as if it had been inserted in the written contract of sale and conveyance.

2. FINAL DECREE—*Former Decree Not Entered But Acted on.*—A final decree is not deprived of its quality of finality by the fact that it is based in part upon a former decree which was never signed by the judge, nor entered on the order book, but was acted on by both the parties and the court, without objection from any source.

3. FINAL DECREE—*What Constitutes.*—A decree which finally disposes of all issues arising or which could properly arise upon an original bill and the answer thereto, as well as upon the answer to the cross bill, is a final decree.

4. EQUITY—*Decrees—Enforcement.*—Although decrees entered in a cause are not final, if valid findings, they should be enforced by a final decree, unless good cause is shown to the contrary.

5. VENDOR AND PURCHASER—*Assumption of Lien—Sale to Pay Lien—Rights of Vendor.*—Where land is sold subject to a debt secured by deed of trust thereon which the vendee assumes as a part of the purchase price, and at a sale under the deed of trust the vendor becomes the purchaser, he is under no obligation, nor can a court of equity compel him, to convey the land to the vendee upon payment by him of the original purchase price.

6. BILL OF REVIEW—*After-Discovered Evidence—Limitation of Actions—Insufficient or Irrelevant Matter.*—A bill of review for after-

discovered evidence should be refused where the finding sought to be reviewed had been made more than two years prior to the filing of the bill, or where, if filed in time, the allegations would not have been sufficient to warrant a reversal, or where the allegations related to matters with which complainants were no longer concerned.

7. Appeal and Error—*Issue Out of Chancery.*—The action of the trial court refusing to order an issue out of chancery will not be reversed, where there is nothing in the record to show that the discretion of the trial court has been abused.

Appeal from a decree of the Circuit Court of Fauquier county. Decree for the defendants. Complainants appeal.

*Reversed.*

The history of this complicated litigation, so far as necessary to an understanding of the questions arising upon the appeal, is as follows: On April 30, 1910, G. G. Bryant, claiming to act for himself and wife, M. Lula Bryant, entered into a written contract with Jacob W. Goode for the purchase of a farm in Fauquier county at the price of $10,600.00, of which $500.00 was recited as paid, $2,600.00 to be paid on delivery of a deed and $7,500.00 to be paid in deferred installments evidenced by bonds and secured by deed of trust on the property.

There was a prior deed of trust in favor of Mrs. Sallie Jones from whom Goode purchased, securing a balance of purchase money amounting at that time to $2,600.00. It was verbally agreed between Goode and Bryant that Bryant should assume the Jones debt, and that the cash to be paid on the delivery of the deed should be used to discharge the same.

On May 4, 1910, Goode executed and delivered to Bryant and wife a deed with general warranty, reciting a consideration of $1,600.00 "paid and secured to be paid," and Bryant and wife executed and delivered to Goode bonds aggregating $7,500.00 secured by deed of trust to C. M. White, trustee (also the trustee in the Jones deed of trust), and G. G. Bryant gave Goode his check for $500.00 for the cash payment recited in the contract. These papers were exchanged, as stated, on

May 4, 1910, but were dated as of April 30, 1910. The $500.00 check was endorsed by Goode and delivered to F. Scott Carter, a real estate agent, on account of his commissions for negotiating the sale, but was never cashed.

G. G. Bryant had been drinking heavily for some time prior to the date of this sale, and almost immediately afterwards was taken to a sanitarium for treatment, where he remained for about three months. During that period his uncle, I. B. Bryant, was appointed as his committee.

No part of the $2,600 was paid by the Bryants either to Goode or to Mrs. Jones, and after default was made by them in the payment of the first installment of purchase· money to Goode, C. M. White, the trustee in both deeds of trust, advertised for a sale under both to be held on October 22, 1910.

On October 21, 1910, I. B. Bryant, committee, filed the original bill in this cause, alleging that G. G. Bryant was temporarily insane when the contract and other papers above mentioned were executed; that the price he agreed to pay for the land was excessive, and that his wife, M. Lula Bryant, had signed the deed of trust and notes because she was forced to do so by fear of her husband. The bill named Jacob Goode and C. M. White, trustee, as defendants, and prayed that said contract, deed, check, bonds and deed of trust securing the same, be cancelled and annulled, and that in the meantime the sale by the trustee be enjoined.

Thereupon, a temporary restraining order was awarded pursuant to the prayer of the bill. On the next day, October 2, 1910, notice being waived by counsel for complainant, the trustee moved the court to dissolve the injunction. The motion was denied, and the trustee then moved the court to dismiss him as a party defendant in his capacity as trustee under the Jones' deed of trust. This motion was granted, except that he was directed to report any sale he might make under that deed of trust and pay into court, as might be directed, all proceeds after first satisfying in full the Jones' debt.

Goode filed an answer and cross bill, which denied the allegations of the original bill as to the competency of G. G. Bryant and the duress of his wife, M. Lula Bryant, prayed for a decree for the remainder of the purchase price of the land and certain damages alleged to have been sustained by him on account of the default of the Bryants, and for an account and all necessary references, and named G. G. Bryant, I. B. Bryant, committee, and M. Lula Bryant as defendants.

Shortly after the dissolution of the injunction, the trustee sold the property under the Jones' deed of trust at the price of $5,000, paid the Jones' debt and expenses of the sale and had a net surplus of $2,000, which he paid to Goode under an agreement of counsel for all parties, the same to be the money of Goode if the Bryants succeeded in having the sale to them set aside, and to be credited by Goode on the purchase money if the sale should not be set aside. The aforesaid sale by the trustee and the deed thereunder was made to one R. W. Harner, who was Goode's brother-in-law and who shortly afterwards conveyed the property to him.

On March 31, 1911, and June 6, 1911, respectively, orders were entered, the purpose of which was to induce the complainant to mature his case for hearing, and at the September term, 1911, a decree was prepared and filed in the cause, manifestly at the time understood by all the parties, and certainly afterwards recognized and acted upon by the parties and by the court, but in fact not endorsed by the judge and not entered in the order book. This decree recites a motion of the complainant for further time to take depositions, criticises his delay and lack of diligence, gives him until October 20, 1911, to mature his case, sets the cause by consent of all parties for hearing in vacation on the 3d day of November, and asserts that the complainant shall not "be heard longer to delay a final decree in the cause." The decree further referred the cause to a commissioner of the court to report, first, as to G. G. Bryant's mental capacity at the date of the contract; second,

as to the amount due Goode under the Bryant bonds, if valid obligations, and any credits thereon; third, as to any damages suffered by Goode on account of the failure of the Bryants to keep the contract; fourth, a full accounting between the parties; and, fifth, any other pertinent matter.

On December 2, 1911, the commissioner reported, showing that he had taken certain depositions but had been unable to make a full report because counsel for the complainant had notified him that he wished to take some depositions which he had not yet done.

On December 19, 1911, a decree in the following words was entered: "This cause came on this day again to be heard by consent of parties by their counsel in vacation upon the plaintiff's bill and exhibits therewith, upon the answer and cross bill of the defendant and exhibits therewith, upon the depositions in said cause, and upon all the other papers in said cause, and was argued by counsel. In consideration whereof, it appearing that the plaintiffs have failed to support their bill by the proofs necessary to support the allegations therein contained, and further that no issues remain to be passed upon, except such as are raised upon the said answer and cross bill, and further that the reference in this cause heretofore had should be continued, with directions to report in full upon said issues raised in said answer and cross bill, the court doth accordingly adjudge, order and decree that the reference heretofore had in this cause be continued, but the commissioner is directed to confine such report and the inquiries under this decree to the issues raised under the said answer and cross bill, and such report shall be filed on or before the 15th day of January, 1912. And by consent this cause may be heard in vacation."

On January 18, 1912, the commissioner reported, stating the account between the parties, and on April 6, 1912, a decree was entered which, among other things, brought the cause on to be heard on the report, permitted M. Lula Bryant, over the

defendant's objection, to file her answer to the cross bill, confirmed the report as to the liability of G. G. Bryant, awarded a recovery against him in Goode's favor for $6,208.91, with interest on $5,825.61 from January 15, 1912, till paid, and costs, and on motion of Goode again referred the cause to the commissioner to afford Goode an opportunity to take evidence on the issue raised by the answer to the cross bill, the commissioner being directed to report whether there was any liability on M. Lula Bryant, and if so, what amount. The decree also permitted G. G. Bryant, over defendant's objection, to file his answer to the cross bill, but held in substance that the filing of the answer could not affect the result already announced as to him. The decree concluded with this provision: "It appearing, however, that defendant Goode having made an offer to deliver the real estate in pursuance of his contract upon compliance with the terms thereof on the part of the complainant, the operation of this decree is suspended for sixty days from this date to enable the complainant to accept this offer should he be so advised, or such settlement as may be reached, . . . ; and the defendant is permitted to docket a memorandum of this decree in order to give notice to creditors and purchaser, and to this end judgment may be entered and docketed upon the lien docket, but execution to be suspended thereon until the further order of this court."

The answer of M. Lula Bryant and G. G. Bryant to the cross bill, referred to in the last-recited decree, each claimed that G. G. Bryant was insane from liquor when the contract and other papers were signed, and that he forced his wife to sign them by threats of violence.

On September 3, 1912, the commissioner reported that the evidence failed to show that M. Lula Bryant should be released; that she owed Goode $5,825.61, with interest from December 10, 1910; and that G. G. Bryant had not accepted the offer left open to him in the said decree of April 6, 1912.

By decree of December 7, 1912, the report was confirmed,

and Goode was awarded a recovery against M. Lula Bryant
for $6,431.41, with interest on $5,825.61 from September 2,
1912, till paid, and costs, but by this decree "M. Lula Bryant
is given until the first day of January term of this court to
settle the obligation sought to be enforced against her" by
accepting the offer made by Goode to allow her to carry out
the original contract, *and execution on the judgment was sus-*
*pended until the first day of the January term (1913) of the*
*court.    The decree recited that G. G. Bryant had failed to*
*accept the offer and vacated the suspension of judgment pre-*
*viously made in his favor.*

On February 3, 1913, I. B. Bryant, committee, G. G. Bryant
and M. Lula Bryant moved for leave to file a bill of review,
and this motion was, by sundry orders, continued from time
to time until nearly a year, but on December 4, 1913, a decree
was entered holding that the bill of review was without merit,
and dismissing the same.    This decree then recited that the
Bryants had indicated to the court "their purpose and desire
to comply with the terms of the contract of purchase and take
the land and pay for the same according to the offer made by
respondent Goode and as · embodied in the decree heretofore
entered," and M. Lula Bryant was permitted, over the objection
of the defendant, to file a petition in the nature of a bill of
review to the decree of December 7, 1912, which fixed her
liability;    and thereupon the cause was referred to the com-
missioner to report, (1) what rents and profits, if any, should
be charged to Goode since the sale under the Jones' deed of
trust, and (2) what amount of damage, if any, to the property
due to the willful mismanagement by Goode should be credited
on the purchase money.    *This decree shows on its face that at*
*that time the defendant, Goode, contended that the right of*
*Mrs. Bryant to accept the offer theretofore made had expired,*
*and that the judgment sought to be reviewed had become final*
*upon her failure to comply with the conditions upon which*
*the same was suspended.*

The bill of review above referred to, offered by all of the Bryants and rejected by the court, sought to have annulled and set aside the decree of April 6, 1912, and December 7, 1912, and went into the history of this litigation, but the gist of the bill was the claim that J. W. Goode had committed a breach of his warranty to the Bryants in permitting the farm to be sold under the Jones' deed of trust, and that thereby the contract between him and the Bryants was abrogated and their liability ended.

The aforesaid petition of M. Lula Bryant, which the court allowed to be filed and treated as a bill of review to the decree of December 7, 1912, set up the claim that neither she nor her husband should be compelled to take the property at the contract price because, (1) Goode had abused the property since the sale under the Jones deed of trust; (2) Goode had originally bought the property for $8,500, and afterwards sold $5,000 of timber from it; and that this fact of the removal of timber by Goode during his former ownership was newly discovered evidence and is direct proof of Bryant's mental unsoundness, because no sane man would "have paid $10,600 for property which cost only a few years ago $8,500 and from which had been taken at least one-half its value."

On December 4, 1913, the date of the last decree of reference, the commissioner reported as follows: (1) profits chargeable to Goode, $365.32, (2) damages chargeable to Goode, $320, a total credit of $685.32 on the debt due to Goode from the Bryants. All the parties excepted to this report.

On April 11, 1914, the court, by decree of that date, overruled Goode's exceptions to the last recited commissioner's report, sustained the exceptions thereto by the Bryants, and, "deeming a further reference unnecessary," ascertained from the record and evidence that a lump sum of $2,000 should be charged to the Goodes for use and occupation, rents, profits and depreciation while he handled the property, stated the account between the parties from the beginning, struck a

balance in favor of Goode in the sum of $10,448.79, with interest from January 1, 1914, awarded judgment against the Bryants for that amount and the costs of the cause, and concluded as follows: "It being suggested to the court that said G. G. Bryant and M. Lula Bryant will pay the sum above set forth as the balance of the purchase money and to further comply with this decree, no decree of sale will be entered at this time, and upon the payment of said debt to said Goode he shall execute and deliver proper deed of general warranty to G. G. and M. Lula Bryant."

The defendant, Goode, was awarded an appeal and *supersedeas* to this last-named decree, which brings it up for review; and the Bryants have assigned cross error.

*R. A. McIntyre* and *Bumgardner & Bumgardner,* for the appellants.

*Keith & Richards,* for the appellees.

KELLY, J., (after making the foregoing statement) delivered the opinion of the court.

The first question to be disposed of in this case arises upon the appellant's contention that the circuit court erred in holding that Goode is not the owner of the farm by virtue of the sale under the Jones' deed of trust. This unquestionably is the effect of the decree appealed from, and we are of opinion that this was error.

It is shown by uncontradicted evidence, and it is further to be inferred from the circumstances, that Bryant for himself and wife verbally agreed to assume and pay the debt secured by the Jones deed of trust. This verbal agreement was just as effective and binding as if it had been recited in the contract and conveyance. Devlin on Real Estate, secs. 1052, 1073; *Gayle* v. *Wilson,* 30 Gratt. (71 Va.) 173; 1 Jones on Mort-

gages, sec. 750; *Bolles* v. *Beach,* 22 N. J. L. 680, 53 Am.
Dec. 263; *Klapworth* v. *Dressler,* 13 N. J. Eq. 62, 78 Am.
Dec. 69, note, p. 84.

The debt, therefore, became the primary obligation of G. G.
and M. Lula Bryant. *Willard* v. *Worsham,* 76 Va. 395; 2
Jones on Mortgages, sec. 740. The sale was regularly and
fairly made, so far as the record shows, with full knowledge
on the part of the Bryants after an order of the court tanta-
mount to its approval. Under those circumstances the sale
under the Jones' deed of trust did not, of course, operate as a
breach of Goode's warranty to Bryant, and Goode was not
estopped by his warranty from acquiring the title by virtue of
the trustee's sale. There is no foundation for the doctrine
of estoppel in such a case, and the rule does not apply. See
16 Cyc. 697; 11 Am. & Eng. Ency. L. 412; 5 Mich. Dig.
216, for reference to numerous authorities to this effect.

It may be observed in this connection that the acquisition
of this title by Goode, although now complained of by the
Bryants, was not to their prejudice. Their own default brought
about the sale, and yet Goode for many months left open to
them the right to redeem the property. If a stranger to the
transaction had been the purchaser, there can be no doubt that
he would have acquired a good title as against the Bryants,
with no other obligation upon him than to pay the amount of
his bid, which would have gone first to the discharge of the
Jones' debt and the costs of the sale, and next, as to any
residue, to the credit of the Bryants on their indebtedness to
Goode. This is exactly what happened under the sale to
Harner, and we are unable to see that the Bryants have any
right to complain on account of the fact that Goode himself
became the owner of the property. On the contrary, they
received from him, as they could not have expected to receive
from a stranger to the transaction, an opportunity to repurchase
the property without any increased cost to them over and above
the purchase price which they originally agreed to pay.

Before taking up the next formal assignment of error, it will be in order, and will clear up a good deal of the confusion in the record, to dispose of a question discussed in the briefs on both sides, but not in itself made the ground of a specific and separate assignment. This question involves the character— whether final or interlocutory—of the decree of December 19, 1911. The appellees contend that it was not final because it "was based upon a report called for by decree of September 11, 1911, which was never entered." If the latter decree affected this question, the fact that it was not entered would make no difference. It was understood at the time and acted upon afterwards by the parties and by the court. The decree of December 19, 1911, itself expressly recognized it and continued the reference provided for in it as to the issues under the cross bill. Subsequently there was a report under it and a decree upon the report. The failure to enter it was never made the subject of objection by complainant. Under these circumstances, the irregularity was of no consequence. *Hess* v. *Voss,* 52 Ill. 472, 477; *Dewing* v. *Hutton,* 48 W. Va. 576, 37 S. E. 670. But as a matter of fact the decree of September 11, 1911, was not essential to either the validity or the finality of the decree of December 19, 1911, and we are of opinion that the latter was final as to any issues arising upon the original bill. Indeed, the original bill might have then been dismissed without in any way affecting the subsequent proceedings upon the cross bill. *Equitable Life Soc.* v. *Wilson,* 110 Va. 573, 66 S. E. 836. The decree regularly and finally determined that the complainant had failed to sustain the allegations of the bill, and thus in legal contemplation ended the question of G. G. Bryant's capacity to make a contract, as well as the question of duress raised by M. Lula Bryant in her answer to the cross bill. It is true that the answer to the cross bill was not filed until a much later date, but there was no good reason for this delay, and the defense which she set up in her answer could just as well have been set up by her on or before December 19,

1911, as at the time of the filing of her answer. It was her legal duty to have set the defense up on or before December 19, 1911, the date of the decree in question, because she had already been served with process on the cross bill, ample time had elapsed for the filing of her answer and the taking of her proof, and the cause was heard on that day by consent of her counsel upon the bill and answer and cross bill and disposed of on its merits. This being true, the decree of December 19, 1911, was a final adjudication upon the question of the contractual capacity of G. G. Bryant and the duress of M. Lula Bryant by her husband. That decree finally disposed of all issues arising or that could properly arise upon the original bill and the answer thereto, as well as upon the answer to the cross bill, except as to such new issues as arose upon the cross bill with reference to the exact amount due upon the bond.

The conclusion here expressed, as to the finality, scope and effect of the decree of December 19, 1911, is fully sustained by the authorities. See *Jones* v. *Buckingham Slate Co.,* 116 Va. 120, 81 S. E. 28; *Diamond State Iron Co.* v. *Rarig & Co.,* 93 Va. 603, 25 S. E. 894.

Entertaining this view of the character and effect of the decree of December 19, 1911, we deem it unnecessary to discuss further the repeated efforts which, in various forms appearing in the record, were made to reopen the question of the liability of G. G. Bryant and wife under the original contract. It is sufficient to say that the circuit court was very indulgent with them in these efforts, gave them every opportunity to be heard, decided these issues against them each time they were raised, and that the final decision thereon had, by limitation, passed beyond the reach of the court long before the date of the decree from which this appeal was taken.

We come now to a consideration of the alleged error of the circuit court in reopening the decrees of April 6, 1912, and December 7, 1912, fixing the liability of G. G. Bryant and M. Lula Bryant, respectively. The court is of opinion that this was plainly erroneous.

It is strongly insisted on behalf of the defendant, Goode, that the decree of April 6, 1912, and December 7, 1912, were final decrees, but in the view we take of the case, it is not necessary to go into this question. If the decrees were not final, they were unquestionably valid findings and must be enforced by a final decree unless good cause is shown to the contrary. The latter we think has not been done.

There is nothing in the record upon which to base the action of the circuit court in setting aside as it did, in effect, by its decree of April 11, 1914, the recoveries against G. G. and M. Lula Bryant in favor of Jacob W. Goode, and nothing upon which to base the requirement that upon payment of the amount of the new recovery allowed in that decree Goode should reconvey the property to the Bryants. The court had already very properly held that there was no error upon the face of the record to warrant a review of the decrees of April 6, 1912, and December 7, 1912, and the only ground upon which it sustained the application of M. Lula Bryant for a review of the latter decree was the alleged newly-discovered facts set out in her petition, as recited in the statement of facts preceding this opinion. The allegations in that petition were wholly insufficient in any view to warrant a reopening or modification of the decree. A part of these allegations pertained solely to the mental capacity of G. G. Bryant, which had been finally adjudicated nearly two years prior thereto, and the allegations, if they had been made in time, would not have been sufficient to change the result of the decree which was sought to be corrected. The remainder of the allegations in that petition which attempted to set up newly discovered facts relating to the alleged abuse of the land by Jacob W. Goode after the sale under the Jones' deed of trust. With this matter neither of the Bryants were longer concerned. They had persistently declined or failed to avail themselves of the voluntary offer of Goode to permit them to take the land if they would comply with the contract, and the offer was no longer open to them.

Their right had expired under this offer when the suspension of the judgment against them expired under the decrees respectively fixing their liability. There was nothing in the allegations to warrant the court in requiring the appellant to renew the offer, and consequently nothing to warrant the petition or so-called bill of review.

We are not insensible to the apparent hardship of a conclusion which must cost the Bryants both the land and a large part of the price which they were to pay for it. This result, however, is one which they have brought upon themselves, and by which, under plain and well-settled rules, they must abide. The only decrees which can now be properly entered in the cause are such as will be necessary in carrying out the recoveries heretofore awarded against the Bryants. It appears from the record that certain assets are now being held by the circuit court to await the final outcome of the suit and also that from these assets the amount of the $500 check to F. Scott Carter has been paid and should be credited upon Goode's recovery. When the cause goes back to the circuit court, as it must do under the conclusion which we have reached, that court, if so requested, should, pursuant to the provisions of section 3451 of the Code of Virginia, correct the judgments heretofore rendered in this cause against G. G. Bryant so as to make them bear interest from the 10th day of December, 1910. This correction will be manifestly proper and can be safely and properly made by reference to the report of the commissioner as well as by other papers in the record.

We do not think the assignment of error on the part of the appellant with reference to certain credits which were allowed to the Bryants at the time of the respective recoveries against them can now be considered, since, regardless of whether there was ever any merit in them, they are now concluded by the decree in the cause.

The cross errors assigned on behalf of the appellees relate (1) to the mental capacity of G. G. Bryant; (2) to the

binding effect upon M. Lula Bryant of the contract of sale, (3) to the refusal of the court to award an issue out of chancery to try the mental competency of G. G. Bryant, and (4) to the alleged breach of Goode's warranty by virtue of the sale under the Jones deed of trust. All of the grounds of cross error have been sufficiently discussed in what has already been said with reference to the errors assigned by the appellant, except the refusal of the court to award an issue out of chancery.

The first reference in the record to any application for an issue out of chancery appears in certain exceptions to one of the reports of the commissioner filed some time after the decree of December 19, 1911, which determined the question of Bryant's sanity. In these exceptions it is stated that a motion was made at the time that decree was entered. The decree is silent upon that subject, but whether such a motion was made or not, the court did afterwards pass upon the question and was of the opinion that the issue should not be directed. We find nothing in the record to warrant us in holding that this was an abuse of the court's discretion, even conceding that there was a timely and regular application for the issue.

The decree complained of must be reversed and annulled and the cause remanded to the circuit court for further proceedings to be had not in conflict with the views expressed in this opinion.

REHEARD JANUARY 13, 1916.

Absent, Cardwell, J.

HARRISON, J., delivered the opinion of the court.

This case is before us upon a petition to rehear the decree pronounced therein at the March term, 1915. We have carefully considered the arguments submitted upon the rehearing and are satisfied that no other proper conclusion can be reached in the case than that stated in the opinion already handed down, which must, for the reasons therein given, be adhered to.

*Reversed.*