# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## Ethel V. Midkiff, in Her Own Right, as the Widow and as One of the Heirs of J. A. Midkiff, Deceased, and Others, v. Rosa C. Glass, also Called Mrs. Robert C. Glass, and Others.

### June 12, 1924.

1. Vendor and Purchaser—*Whether Executory Contract of Sale or Option—Case at Bar.*—In the instant case, by a written contract, the owners of property agreed to sell and convey the property to a purchaser for a certain consideration and the purchaser paid $50.00 as part payment at the time of the execution of the contract. The contract was signed by the owners and the purchaser.

   *Held:* That the contract was a contract of sale and not a mere option.

2. Vendor and Purchaser—*Consideration—Promise to Convey a Sufficient Consideration for a Promise to Pay Unpaid Purchase Money.*—A promise to make a conveyance furnished a valid and sufficient consideration to bind the purchaser and his estate to perform the promise of payment of the unpaid purchase money.

3. Vendor and Purchaser—*Executory Contract of Sale—Agreement to Convey and Agreement to Pay Purchase Price—Case at Bar.*—In the instant case it was contended that an alleged executory contract for the sale of land contained nothing to the effect that the vendors agreed to sell or that the purchaser agreed to buy and pay the purchase price. The contract stated expressly that the vendors "agree to sell and convey" the land; and it also stated expressly that the contract was between the vendors and the purchaser; that the land was to be conveyed to the purchaser, and that the sum of $50.00 was in hand paid to the vendors by the purchaser as part payment; and set forth the terms upon which the balance of the purchase money was to be paid. The contract was signed by the vendors and the purchaser.

   *Held:* That it was obvious that this was an obligation of the purchaser to make the remaining unpaid payments.

4. Vendor and Purchaser—*Description of Land—Sufficiency—Case at Bar.*—In an executory contract for the sale of land, the land was

described as located in the Staunton magisterial district and as adjoining the land of a brother of the purchaser. The vendors owned no other land adjoining the land of purchaser's brother. The land was well known to the purchaser at the date of the contract. Although the land at one time was in the Staunton magisterial district, yet at the time of the contract, owing to the creation of a new magisterial district, the land was located in such district.

*Held:* That the description of the land in the contract furnished sufficient means to identify it.

.5. DEEDS—*Vendor and Purchaser—Description of Land—Parol Evidence.*— Where the description of land is attacked as not being sufficient to identify it parol evidence is admissible to the effect that the vendor only owned one tract of land in the locality designated.

6. VENDOR AND PURCHASER—*Deeds—Description of Land.*—It may be laid down generally that great liberality is allowed in the matter of description. In description that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey. The office of description in a deed, or other writing, is not to identify the land, but to furnish means of identification.

.7. SPECIFIC PERFORMANCE—*Decree—Possession of the Property.*—In a suit for specific performance by the owners of land against the representatives of the purchaser the decree in favor of the owners made no provisions with respect to when possession of the property was to be delivered. The defendants had steadfastly refused to take possession of the land in question, or to in any way recognize the contract in suit as a valid contract, binding upon them, or upon the estate of the purchaser and they appealed from the decree under review.

*Held:* That for the decree to have provided for a date when the possession of the property was to be delivered to parties whose position before the court was that they refused to take possession would have been to do an idle and useless thing.

Appeal from a decree of the Circuit Court of Pittsylvania county. Decree for complainants. Defendants appeal.

*Affirmed.*

This is a suit brought by the appellees, Rosa C. Glass and others (hereinafter called plaintiffs), against the

appellants (hereinafter called defendants), to enforce specific performance on the part of the estate of J. A. Midkiff, deceased, of a certain contract in writing, executed both by the said decedent in his lifetime and by the plaintiffs, for the purchase by the decedent, and the sale to him by the plaintiffs, of a certain farm.

There was a demurrer and amended demurrer to the bill, which the court overruled. Thereafter, upon the bill and exhibits, the answers of the defendants and upon depositions taken and filed, the court entered the decree, of date August 14, 1922, requiring the estate of said decedent to pay to the plaintiffs the unpaid purchase money as stipulated in said contract, being $9,190.00, with interest thereon from the 15th day of December, 1920, until paid.

The action of the court below in overruling the demurrer and amended demurrer and in entering said decree is assigned as error by the defendants, on certain grounds, the following only of which are sufficiently debatable to need to be stated, namely:

1. That the contract was merely an option, and not a contract of purchase binding upon the decedent or his estate.

2. That the description of the land in the contract was insufficient to identify it. And

3. That the decree withholds the giving of deed for the property until the purchase money is paid in full, but says nothing about when possession of the property is to be given.

The aforesaid contract is as follows:

"This contract, made this 17th day of May, 1920, between Mrs. Robert Glass and T. A. Carr, parties of the first part, and J. A. Midkiff, party of the second part.

"Witnesseth, that for and in consideration of the sum of $50.00 (fifty dollars) in hand paid to the parties of the

first part by J. A. Midkiff, party of the second part, as part payment on the following property and binding the above parties mentioned, Mrs. Robert Glass and T. A. Carr, parties of the first part, agrees to sell and convey with general warranty of title to the said J. A. Midkiff, party of the second part, the following described land, situated in Staunton magisterial district, Halifax county, Virginia, adjoining the land of W. T. Midkiff, Mr. Clark and others, containing 154 acres, more or less, for $9,240.00 (nine thousand two hundred forty dollars), to be paid one-third cash on or before 15th day of December, 1920, the balance one, two and three years with equal installments, bearing six per cent interest. Parties of first part agrees to let 2,500 sticks and all wire go in addition to the property. J. A. Midkiff, party of the second part, reserves the right to sow fall grain and to get full possession January 1, 1921.

"Witness our hand and seals and signatures this the day and year above written.

|                      |          |
|----------------------|----------|
| "J. A. Midkiff       | (Seal)   |
| "Ethel V. Midkiff    | (Seal)   |
| "Mrs. Robert Glass   | (Seal)   |
| "Robert H. Glass     | (Seal)   |
| "T. A. Carr          | (Seal)   |
| "Mattie Carr         | (Seal)." |

The evidence, without any conflict, is to the following effect:

That the land in question is located in what was at one time the Staunton magisterial district mentioned in the contract, but about eleven years before the date of the contract a new magisterial district was created and changes made in the boundary lines of Staunton district, which included such land, so that, as of the date of the contract, the land was not situated in Staunton

magisterial district, but in Banister district of Halifax county.

That the land in question, at the time of the contract, adjoined the land of W. T. Midkiff, a brother of the said decedent; that it was the only land which the plaintiffs owned or in which they or any of them had any interest, which adjoined the land of W. T. Midkiff; that the plaintiffs owned no land anywhere else other than the land in question, in which they all had an interest; that the land was well known to the decedent at the date of the contract, and had been so known to him for many years prior thereto, he having lived in the neighborhood of this land practically all of his life; that in recent years he had moved away, and that his wife (the said widow) wanting to move back into the same neighborhood was the chief reason which induced the decedent to buy this farm; that just preceding the signing of the contract the decedent had gone over the land and examined its condition; and subsequently to executing the contract and before his death the decedent stated to his brother, W. T. Midkiff, that he had bought this farm.

That the plaintiffs were ready, willing and able to convey the property in accordance with the contract, and that they were ready, willing, able and anxious to deliver full possession of the property in accordance with the contract, on January 1, 1921, and have been ready and willing and able at all times since to so convey the property and to deliver such possession; but the said decedent died shortly after the execution of said contract, without having taken any possession of said land, and his widow and heirs, the defendants, have since such death refused to take possession of the land, denying that the contract is a valid contract or binding upon them in any way.

*Whitehead & Hurt* and *J. T. Watson*, for the appellants.

*A. H. Light*, for the appellees.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

[1] There are a number of assignments of error which concern principles of law and of equity jurisprudence so long and so well settled, and which are so obviously without merit, that it would serve no useful purpose whatever to consume time in their discussion. Hence, they are disregarded. The following questions raised by the assignments of error will be specifically disposed of in their order as stated.

· 1. Was the contract in suit merely an option; or was it a contract of purchase, binding upon the decedent and his estate?

The first branch of the question must be answered in the negative; the second branch in the affirmative.

[2, 3] There are no circumstances shown in evidence which tend to show that the contract was not intended to mean just what it says. The contract, therefore, speaks for itself, and it is apparent on its face that it was not an option, but a contract of sale on the part of the plaintiffs and of purchase on the part of the decedent, J. A. Midkiff, to bind which, on the part of the plaintiffs, vendors, the decedent, as vendee, paid, and the plaintiffs accepted, $50.00, on account of the purchase price, and in which the plaintiff vendors promised and bound themselves to convey the land, as stated, to the decedent, as vendee, upon the payment of the whole purchase money stated, which was to be paid as stated. Such promise to make the conveyance furnished, in itself, a valid and sufficient consideration to

bind the decedent and his estate to perform the prom-
ise of payment of the unpaid purchase money.   But, it
is said in the petition for the appeal: "There is nothing
stated in it (the contract) to the effect that Glass and
Carr agree to sell and Midkiff agrees to buy, nor is there
anything expressing the agreement or promise of Mid-
kiff to pay the purchase price agreed upon." There is
obviously no merit in this contention.   The contract
states expressly that "Mrs. Robert Glass and T. A.
Carr   *   *   agrees to sell and convey" the land; and
it also states expressly that the contract is between such
parties "and J. A. Midkiff;" that the land is to be con-
veyed to him, and that the purchase money of the
amount stated, of which "the sum of $50.00 (was) in
hand paid to the parties of the first part" (the said
Glass and Carr) "by J. A. Midkiff   *   *   (is) to be
paid," and the decedent, J. A. Midkiff, signs this con-
tract.   That this is an obligation of J. A. Midkiff to
make the remaining unpaid payments is too obvious to
need further consideration.

[4] 2. Does the description of the land contained in
the contract furnish sufficient means to identify it?

The question must be answered in the affirmative.

It is plain that when the description of the land con-
tained in the contract is read in the light of the circum-
stances, shown in evidence, as set forth in the state-
ment preceding this opinion, it designates, and thus fur-
nishes sufficient means to identify the land beyond any
doubt—a degree of definiteness far beyond what is re-
quired in any civil case.

[5] As to the effect of the showing by parol evidence
that the vendor owned only one tract of land in the lo-
cality designated in the contract, see *Matthews* v. *La
Prade*, 130 Va. 408, 415-421, 107 S. E. 795.

[6] And, further, as said in that case, quoting with

approval from *Holley* v. *Curry*, 58 W. Va. 70, 51 S. E.
135, 112 Am. St. Rep. 944: "It may be laid down gen-
erally that great liberality is shown in the matter of de-
scription.    In description that is certain which can be
made certain.    A deed will not be declared void for un-
certainty if it is possible, by any reasonable rules of con-
struction, to ascertain from the description, aided by
extrinsic evidence, what property it is intended to con-
vey.    The office of description in a deed, *or other writ-
ing*, is not to identify the land, but to furnish means of
identification."    (Italics supplied.)    See also the other
cases cited in *Matthews* v. *LaPrade*, and *Harper* v. *Wal-
lerstein*, 122 Va. 274, 94 S. E. 781, L. R. A. 1918-C, 517;
and cases therein cited.

The following cases are cited and relied on for the de-
fendants on the subject under consideration, namely:
*Grayson Lumber Co.* v. *Young*, 118 Va. 122, 86 S. E. 826;
*Ashberry* v. *Mitchell*, 121 Va. 276, 93 S. E. 638, L. R. A.
1918-A, 785; and *Smith* v. *Mullen*, 113 Va. 671, 75 S. E.
130.    But an examination of these cases discloses that
they have no application to the case before us.    They
are all cases of descriptions of lands consisting of parts
of larger tracts, to be cut off from the larger tracts, re-
spectively, where the dividing line, or lines, were not
designated in the writing in question.

[7] 3. Was the decree under review erroneous in that
it made no provision with respect to when possession of
the property was to be delivered?

The question must be answered in the negative.

The defendants have steadfastly refused to take pos-
session of the land in question, or to in any way recog-
nize the contract in suit as a valid contract, binding
upon them, or upon the estate of the decedent; and they
appealed from the decree under review holding that po-
sition untenable.    For the decree to have provided for

8

a date when possession of the property was to be delivered to parties whose position before the court was that they refused to take possession would have been to do an idle and useless thing.

The action of the court overruling the demurrer and amended demurrer to the bill, and the decree of August 14, 1922, under review, will be affirmed.

*Affirmed.*