# Richmond.

## A. C. SWAIN AND ANNA P. SWAIN v. VIRGINIA BANK AND TRUST COMPANY, INC., ET AL.

September 27, 1928.

The opinion states the case.

*Jas. G. Martin*, for the appellants.

*Mann & Tyler* and *Hughes, Vandeventer & Eggleston*, for the appellees.

CRUMP, P., delivered the opinion of the court.

In the year 1922, Paul Bukva was the owner of a parcel of real estate in the city of Norfolk, which will be designated briefly as the Colonial avenue property.

He encumbered this property by three deeds of trust to secure notes and interest notes executed by him, his wife joining him of course in the deeds of trust. The first deed was made on October 2, 1922, to J. R. Kilby, trustee, to secure the sum of $12,000.00 evidenced by notes payable October 2, 1925, and interest notes payable semi-annually, all the notes being payable to bearer. The Virginia Bank and Trust Company, the appellee, became the holder of the notes.

The two subsequent deeds of trust, both of which were made in the autumn of 1922, were executed in order of priority as follows, the second deed to secure a note of Bukva's for $4,000.00, and the third deed to secure Bukva's note for $6,000.00.

Default having been made in the payment of taxes on the property, in violation of a covenant in the third deed of trust, the trustee in that deed made sale of the property in 1924, at public auction, under the terms of the deed, subject of course to the two prior recorded liens. At this sale Mrs. Irma G. Becker became the purchaser of the property at the price of $250.00, and on February 2, 1924, the trustee conveyed the real estate to her, the deed containing this recital, viz: "This conveyance is made subject to two certain other deeds of trust, which had been recorded in said clerk's office prior to the recordation of said deed of trust of October 27, 1922, securing the sum of $16,000." Naturally the purchaser, under the third deed of trust of October 27, 1922, took title in any event subject to the two prior recorded deeds showing encumbrances aggregating $16,000.00.

Mrs. Becker was a resident of New York city, and Sophie Bukva, the wife of Paul Bukva, was acting as her agent, under a power of attorney executed by Mrs. Becker and her husband, in further disposing of the property.

As a result of negotiations conducted by Walter G. Blick, a real estate agent in Norfolk, a sale or exchange of properties was arranged between Mrs. Becker and A. C. Swain and Anna P. Swain, his wife, the latter being owners of a portion of a sub-division in Princess Anne county covering nearly seventy acres of land. The following preliminary contract, or "agreement of sale and exchange," drawn by the real estate agent, was then executed by all parties in interest:

"This agreement of sale and exchange of properties made in triplicate this 20th day of March, 1924, between Sophie Bukva, attorney in fact for Irma G. Becker and Frank G. Becker, her husband, and Paul Bukva, husband of said Sophie Bukva (hereinafter known as the vendor) and A. C. Swain and Anna P. Swain, his wife, (hereinafter known as the vendee) and Walter G. Blick (hereinafter known as the Agent).

"Witnesseth: That for and in consideration of the sum of one ($1.00) dollar, receipt of which is hereby acknowledged, the vendee agrees to buy and the vendor agrees to sell the property known and numbered as 913 Colonial avenue, Norfolk, Virginia, said property being three story brick residence and the lot on which the building is situated, said lot having a frontage of thirty-two and one-half feet, more or less, on the west side of Colonial avenue, and of the depth of 123 feet, more or less, together with all improvements thereon.

"The vendor agrees to buy and the vendee agrees to sell a certain tract of land situated in Princess Anne county, Virginia, Lynnhaven district, consisting of 69.882 acres or less, and located about one-fourth mile west of Rosemont station on the line of the Norfolk and Southern Railroad in said Princess Anne county, fronting on London Bridge road approximately 13,392

feet, and being of the depth and width as shown on the plat and title, 'sub division of the S. R. White & Bro. farm for Walter M. Holland, Princess Anne county, Virginia. Scale: lin.—one hundred feet December 6, 1919. G. H. Massey, C. E., Norfolk, Virginia.'

"The said property comprising the eight blocks shown on said plat known as parcels No. 2 to No. 9, inclusive.

"The difference in the equities of the said properties being the sum of five hundred ($500.00) dollars due the vendor by the vendee, less taxes, interest and insurance to be *pro rated* as of April 15, 1924.

"The vendor hereby agrees to assume a loan of six thousand ($6,000.00) dollars on the tract of land in Princess Anne county referred to above, bearing six per cent interest, payable semi-annually, and the vendee agrees to assume a first deed of trust of twelve thousand ($12,000.00) dollars and a second deed of trust for four thousand ($4,000.00) dollars on the 913 Colonial avenue property, interest at six per cent payable semi-annually.

"It is agreed that the titles to the property are to be free and clear of all liens and indebtedness of every kind except the deeds of trust referred to above.

"Settlement of this sale and exchange of properties is to be made on or before April 15, 1924.

"The vendor agrees to pay the said agent, Walter G. Blick, five hundred (*$500.00*) dollars and the vendee agrees to pay the said agent, Walter G. Blick, five hundred (*$500.00*) dollars as agreed compensation for making this sale and exchange of properties.

"Witness the following signatures and seals made this 29th day of March, 1924.

"(Signed) SOPHIE BUKVA, (Seal)
   "Attorney in fact for IRMA G. BECKER AND FRANK G. BECKER.
   "SOPHIE BUKVA, (Seal)
   "PAUL BUKVA, (Seal)
   "A. C. SWAIN, (Seal)
   "ANNA P. SWAIN, (Seal)
   "WALTER G. BLICK, (Seal)"

Pursuant to this contract A. C. Swain and wife, by their deed of April 15, 1924, conveyed the county property to Mrs. Becker "in consideration of the sum of ten dollars and the assumption of a certain debt of $6,000.00 secured by deed of trust" on the property. And by a deed of like date Sophie Bukva, as attorney in fact for Mrs. Becker and her husband, conveyed the Colonial avenue lot to A. C. Swain, "in consideration of the sum of ten dollars ($10.00) and other considerations deemed valuable in law," but this deed did not in terms require the grantee to assume payment of the two liens mentioned in the contract, the only reference thereto contained in the deed being as follows, after a statement that this real estate was the same property conveyed to Mrs. Becker by the deed of February 24, 1924, from the trustee, viz: "This conveyance is made subject to two certain deeds of trust aggregating $16,000 and which are referred to in the said deed to Irma G. Becker."

Default having been made in the payment of some of the notes secured in the first deed of trust, placing a lien on the property for $12,000.00, the trustee in that deed, at the instance of the Virginia Bank and Trust Company, holder of the notes, foreclosed and the prop–

erty was sold at public auction November 23, 1925, to the highest bidder at the price of $10,500.00. Upon a settlement of the trustee's account, a balance of $3,297.41 still remained due to the Virginia Bank and Trust Company, the proceeds of sale not being sufficient to extinguish Bukva's indebtedness of $12,000.00, by that sum. Thereupon the Bank and Trust Company filed its bill in equity against Paul Bukva, A. C. Swain and Anna P. Swain claiming a right to require payment of said balance by Paul Bukva as in effect the mortgagor and creator of the indebtedness, and of A. C. Swain and Anna P. Swain by reason of their contract in which they agreed to assume payment of Bukva's indebtedness as part of the consideration flowing from them upon their acquisition of the property. Upon the final hearing the trial court decreed in favor of the plaintiff against all three of the defendants for the balance claimed, whereupon the two defendants, Swain and his wife procured this appeal.

Learned counsel for the appellants points out some peculiar features in the contract and some deviation in the deeds from the apparent arrangement of the parties in the contract, and comments upon them. Attention is directed to the fact that "Paul Bukva, husband of Sophie Bukva," is noted as *vendor* of the Colonial avenue property together with Mrs. Becker and husband acting through their attorney in fact, Mrs. Bukva; that Paul Bukva signed the contract, but did not become a party as grantor with Mrs. Becker and her husband to Swain, and was not a party as grantee together with Mrs. Becker in the deed made by Swain and wife. The position of the parties as *vendors* and *vendees* is rather inartificially stated, but when it is considered that Mrs. Becker was sole owner and holder of the legal title to the Colonial avenue property and the

Swains were the sole owners of the legal title to the county property, these parties were obliged to know what the contract for the exchange of these respective properties contemplated.

That they did understand the situation and the character of deeds essential for the passage of title to each parcel of property is conclusively shown by the conveyances respectively, made and accepted by them as in compliance with the contract. Bukva explains his becoming a party to the contract by stating it was because of his interest in having the purchasers of the Colonial avenue property assume the payment of the liens on that property for which he was liable. Without his statement, it is the only reasonable inference to be drawn from the provisions of the contract. The evidence in the case is very meagre—the real estate agent does not testify, it is not shown who drew the deeds nor what occurred at the time of their execution. Paul Bukva did not answer the bill. The Swains both demurred and answered, but the answers contain little more than the demurrer. There is no charge nor suggestion of any deception or fraud practiced upon the Swains.

The evidence shows that after the conveyance to him in April 1924, Swain paid the interest on the $12,000.00 up to and including October 2, 1925, when the principal became due; that after the contract of March 1924, Bukva paid none of the interest notes, and upon maturity of the debt his attention was not called to it, but Mr. Swain had some negotiations with the Bank and Trust Company with reference to a renewal or extension of the loan, which were, however, without result.

The vital question raised upon this appeal is whether the failure to insert in the deed from Irma G.

Becker to Swain an express provision or covenant that the grantee should assume payment of the $12,000.00 lien relieves the grantee of liability for such payment, or on the other hand whether the assumption of the lien in the contract could nevertheless be shown by the mortgagee or lienholder and be relied upon by the latter as a valid ground of recovery.

■ There is a statement in the contract that the "difference in the equities of the said properties" is $500.00 to be paid Mrs. Becker or the vendor by the Swains. The record contains no information as to actual or estimated value of either parcel of property, nor is any explanation made of the method by which, or the basis upon which, the difference in equities was calculated. In law an exchange of real estate is, as to each one of the parties, a sale and purchase of the property of the other.

The Swains agreed by the contract to purchase the Colonial avenue property and as consideration for its conveyance to transfer the county property subject to a mortgage of $6,000.00 which Mrs. Becker was to pay, and in addition to assume the $16,000.00 mortgage on the real estate bought by them; so that the Swains appear to have contracted to render a consideration, consisting of the county property, and an undertaking to pay $10,000.00. Certainly from the general tenor and the specific provisions of the contract, the parties must have understood this, and the fact that Bukva was named as a *vendor* emphasizes the intention that the Swains' agreement to assume the liens should enure to his relief. There is no evidence upon which to determine whether or not this was a bad bargain for the Swains.

It is argued on behalf of the appellants that the contract embracing the result of negotiations leading

to the execution of the deed from Mrs. Becker to the Swains become merged in the deed, and as the deed contained no assumption clause, the contract did not furnish a basis for a suit by the lienholder or mortgagee.

■ The law is well settled to the contrary both in Virginia and other jurisdictions. It is a recognized rule that, independent of or in explanation of the recitals in a conveyance of real estate, the true consideration agreed upon may be shown, not only by a collateral writing stating the actual consideration, but by parol evidence as well.

In *Goode* v. *Bryant*, 118 Va. 314, the court says, on page 322, 87 S. E. 588, 591: "It is shown by uncontroverted evidence, and it is further to be inferred from the circumstances, that Bryant for himself and wife verbally agreed to assume and pay the debt secured by the Jones deed of trust. This verbal agreement was just as effective and binding as if it had been recited in the contract and conveyance." And see *Echard* v. *Waggoner*, 126 Va. 238, 101 S. E. 245; *Midkiff* v. *Glass*, 139 Va. 218, 123 S. E. 329.

■ In *White* v. *Schader*, 185 Cal. 606, 198 Pac. 19, 21 A. L. R. 499, 504, and copiously annotated, the court holds:

"It is not necessary that there should be a formal promise, on the part of the grantee, to pay the mortgage debt, in order to render him liable therefor, if his intention to assume the debt appears from a consideration of the entire instrument. The obligation may be made orally or in a separate instrument; it may be implied from the transaction of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the agreement."

See also 3 Tiffany on Real Property (2nd ed.) page 2485, *Shockley* v. *Roelli*, 188 Wis. 564, 206 N. W. 856.

■ In the instant case, the deed merely recites the purchase price as ten dollars and "other considerations deemed valuable in law;" necessarily requiring explanation; and is plainly a reference to the covenants in the agreement.

It appears that Mrs. Becker paid only $250.00 for the property subject to the prior liens when sold under the third deed of trust. Although she was not required in such a sale to assume the prior mortgages, the small amount of her accepted bid seems to indicate that no reliance could be placed upon Bukva to relieve the property of the prior existing liens. The agreement of sale and exchange recites that it was "made in triplicate," presumably for the reason that the three parties signing the agreement in their several interests were Mrs. Becker, Bukva, and the Swains. Bukva testified that he was the maker of the notes secured by the mortgages on the property; he was present when the contract was signed by all parties and he wanted Swain and wife to assume the payment of his debts, and that the assumption provision was incorporated in the agreement as the result of a discussion between Swain and himself. Swain contradicted some of these statements, but the facts as stated by Bukva are more in accord with the circumstances and with the terms of the contract.

■■ We have, therefore, an independent contract, under seal, not only executed by the owners of the two parcels of real estate to be exchanged, but also by the maker of the liens, as to whom one of the parties agreed that he would assume the payment of the liens. Such is clearly the legal effect of the covenants in the instrument.

In the cases of *McIlvane* v. *Big Stony Lumber Company*, 105 Va. 613, 54 S. E. 473, and *Thacker* v. *Hubard & Appleby*, 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414, referred to by counsel for appellants, it was held—before the statute was amended as appears in section 5143 of the Code of 1919—that upon a mere assumption of a mortgage by the grantee in a deed, the grantor having placed the mortgage on the property, the mortgagee could not maintain an action at law against the assuming grantee, for the reason that the mortgagee was not under the then statute the *sole beneficiary* of the assumption agreement, and was not therefore in privity with the parties to the agreement. In *Casselman's Adm'x* v. *Gordon and Lightfoot*, 118 Va. 553, 88 S. E. 58, it was held that when one who had not assumed the mortgage upon the property conveyed to a party who did assume its payment in the conveyance, then the covenant or promise was made for the sole benefit of the mortgagee, as the grantor was under no liability, and the mortgagee could proceed directly against the grantee. For similar holdings see *McDonald* v. *Finseth*, 32 N. D. 400, 155 N. W. 863, L. R. A. 1916D, pages 149, 154; *Duval Percival Trust Co.* v. *Jenkins* (C. C. A.), 16 Fed. (2d series) 223; 13 Va. Law Review, page 500. It may be argued that the principle there announced is not applicable to the instant case because the maker of the notes was a party to the contract and became a beneficiary under it, and hence the mortgagee could not be the sole beneficiary. This is, however, met by the statute as amended in section 5143 of the Code, which allows anyone, although not a party to a contract, to maintain a suit upon a covenant or promise made "in whole or in part" for his benefit. This statute very clearly gives a right to the appellee here to sue upon the covenant or promise made by the

Swains to assume the liens on the property. *Montague Manufacturing Company* v. *Homes Corporation*, 142 Va. 301, 128 S. E. 447; *Indemnity Insurance Company of North America* v. *Davis Adm'r*, 150 Va. 778, 143 S. E. 328; *Duvall-Percival Trust Co.* v. *Jenkins* (C. C. A.), 16 Fed (2nd series) 223, 13 Va. Law Review, 500.

In the recent case of *University of Richmond* v. *Stone*, 148 Va. 686, 139 S. E. 257, the property was sold and conveyed to several purchasers in succession each of whom assumed the mortgage debt; their liability was not disputed, the only controversy in the case turning upon the question whether the several purchasers were liable for an attorney's fee provided for in the note secured. The court held they were so liable, reversing the lower court, and entered a decree in favor of the lienholder against all the assuming purchasers, as well as the maker of the note and mortgage.

The jurisdiction of the equity court was not questioned in the lower court by demurrer or otherwise, nor is that matter presented in this court by assignment of error or in argument. The parties manifestly desire, we take it, that the court should consider and determine their substantive rights upon this appeal.

For the reasons given we are of opinion that no error has been shown in the decree complained of and it is therefore affirmed.

*Decree affirmed.*

CHRISTIAN, J., dissenting:

This suit was brought upon an executory agreement to *exchange* land with all the legal incidents of such contract. It is the general rule of law that where an executory contract of sale or exchange is followed by a subsequent deed, *in the absence of fraud or mistake*, the deed operates as a *satisfaction* and *discharge* of the executory contract—that is the executory contract is

merged in the executed contract—and that the rights of the parties rest solely on the deed.

The grant of equal interests in lands is the consideration moving to the respective owners in the contract of exchange. "It is to be observed, lastly, that there can be but two *distinct parties* to an exchange as intimated by Littleton; but there may be any number of persons, so they constitute only two *parties in interest.*" 2 Minor's Inst. (2nd ed.), page 705. For example, joint tenants or tenants in common may be parties to an exchange.

Bukva having no interest in the Colonial avenue property, agreed to be exchanged for the Swain land, he was an improper party to the agreement to this exchange—wherein he described himself as *vendor*—that he was a tenant in common of the land—that must mean, that he thereby represented himself as joint owner—therefore his injection of himself into the executory agreement of exchange was a fraud or mistake. This injection of himself into the contract to exchange land contrary to law was evidently discovered by the attorney who drew the deed from Mrs. Becker to the Swains, which in law operated as satisfaction and discharge of the executory contract of exchange, purged it of the fraud and mistake of Bukva. If Mrs. Becker had put the agreement to assume the liens upon her lot in the contract she might claim there was fraud or mistake in the deed, but the evidence conclusively proves that it was injected therein by Bukva who had no more interest therein than any other stranger, and he cannot claim any rights in the contract because his fraud was discovered. The fountain cannot raise higher than its source, so the Trust Company cannot assert any right against Swain that Bukva did not have.

The error in the majority opinion arises out of the fact, that it disregards the common law distinction between an executory contract to transfer title and possession of land for a valuable consideration measured in money terms, and one where the consideration is equal interests in lands; and the legal rules incident to a sale and exchange respectively. "A contract by which the title and possession of a slave are transferred for a valuable consideration measured in *money terms* is a sale, whether the consideration be paid in money or something agreed upon as its equivalent; but a contract by which the owner of two slaves transfers them to another, in consideration of two other slaves and one hundred dollars, the price or value not being measured in money terms is an *exchange.*" *Gunter* v. *Leckey*, 30 Ala. 591.

Counsel for the appellee recognizes this distinction and says on page four of its brief: "We have not been able to find any Virginia case dealing with this subject and must, therefore, rely upon authorities of other States."

Every case of exchange therein cited, the *owners* agreed to exchange interests in land, and one of owners added as additional consideration that the other should assume a mortgage.

Not a case was cited, and it is fair to be said none can be found, where a stranger to the ownership has added to the consideration an assumption of his debt, and parties exchanging interests in land, execute conveyances according to the exact consideration passing between them; that the creditor of this meddler can claim any rights in the illegal contract.

Notwithstanding the above admission of counsel, the majority opinion states that the appellants claim that the executory contract became merged in the deed

from Mrs. Becker to Swain, and then says: "The law is well settled to the contrary in Virginia and other jurisdictions. It is a recognized rule that, independent of or in explanation of the recitals in a conveyance of real estate, the true consideration agreed upon may be shown not only by a collateral writing stating the actual consideration, but by parol evidence as well."

This statement of the law is correct, and the cases of *Goode* v. *Bryant*, 118 Va. 314, 87 S. E. 588; *Echard* v. *Waggoner*, 126 Va. 238, 101 S. E. 245; and *Midkiff* v. *Glass*, 139 Va. 218, 123 S. E. 329, cited are authority for the rule.

All of those cases were cases of sales, and not one an exchange. The assumption of the lien was part of the valuable consideration fixed by the grantor as the value of the land, and not a stranger to its ownership. But it may be contended that a benefit to a third person constitutes a valuable consideration. This cannot be denied, *but the grantor* must make this benefit to the third party the consideration or part of the consideration for the conveyance.

The true consideration between proper parties to this exchange was their respective interests in the land. Swain required Mrs. Becker, in addition to his land, to assume the lien thereon. Mrs. Becker did not require Swain to assume any lien, but conveyed to him subject to liens for which she was not personally bound. The fact that Swain paid the interest notes to the Trust Company and negotiated with it for an extension of time of payment cannot bind Swain to pay the deed of trust notes; his acts were for the protection of his property, and he could only assume Bukva debt by a valid contract in writing. No consideration passed to Swain from Bukva to support any agreement to assume his personal debt to the Trust Company. He made it

appear in the contract that he was vendor—and would convey Swain an interest in the land in consideration of his personal liability to the Trust Company—this he did not do and could not do—therefore there was no contract between Bukva and Swain, and no rights could inure therefrom to the Trust Company.

The appellee realized that the contract was without consideration moving from Bukva to Swain and urged that the contract being under seal imported a consideration. This fiction of law can have no application in this case, because a consideration, the exchange of interests in land are set forth plainly therein and Bukva having no interest in the land could furnish no part of the consideration, and got no benefits from the same.

For the above reasons, I think the decree should be annulled and this court should enter a decree in favor of the appellants.