WILLIAM A. WELLS, ET AL.

v.

JACK A. SHOOSMITH, ET AL.

Record No. 921016

April 16, 1993

Present: All the Justices

*W. Scott Street, III (Williams, Mullen, Christian & Dobbins*, on briefs), for appellants.

*William G. Broaddus (Thomas L. Newton, Jr.; Therence O. Pickett; John E. Dodson; McGuire, Woods, Battle & Boothe; Gordon, Dodson & Gordon*, on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this declaratory judgment suit, filed by property owners who bought a farm subject to two leases, we consider two issues: First, whether the complainants introduced sufficient evidence to raise an issue of the invalidity of the leases because of alleged inadequacies in the descriptions of the demised properties; second, whether the complainants, as successors in title to the original lessors, have

standing to attack the adequacy of the agreed consideration to be paid by the lessees.[1]

By deed dated January 7, 1964, J.J. Jewett, Special Commissioner, on behalf of the Commonwealth, conveyed 66 acres of marshland in Chesterfield County to Lewis S. Pendleton, Jr. This land was described as an island in the Appomattox River that was "waste and unappropriated" land, and thus subject to sale under the provisions of former Code § 41-84 (1953), now Code § 41.1-16, as amended. Thereafter, Pendleton and his successor in title, the Buzzard Island Shooting Club, Inc. (Buzzard Island), took possession of the property.

However, a 9.74-acre portion of that conveyance was part of a 441.64-acre farm on the Appomattox River in Chesterfield County. The farm was known as the Johnson farm and was owned by John Lofton Johnson and others (the Johnsons) as heirs at law of John G. Johnson. The Johnsons were informed of Pendleton's claim in 1971.

On July 25, 1980, the Johnsons leased the 9.74-acre parcel (the first lease) to William A. Wells, William A. Wells, Jr., James E. Cuddihy, Jr., and James E. Cuddihy, III (collectively Wells). Its pertinent provisions follow:

That for and in consideration of the sum of $1.00 cash in hand paid, receipt of which is hereby acknowledged, the parties of the first part do hereby lease and demise unto the parties of the second part *that certain marsh belonging to the parties of the first part but claimed by Louis [sic] Pendleton*, for a term of fifty (50) years at an annual rental of Ten Dollars ($10.00) per year. It is understood that the parties of the second part are bearing the cost of pending litigation to have Louis [sic] Pendleton and those claiming through him evicted from the aforesaid property. Should the suit to evict Louis [sic] Pendleton and those claiming by or through him not succeed then this lease shall become null and void.

(Emphasis added.)

---

[1] The property owners also contend that the alleged lessees have no interest in the property because they were mere licensees whose license was revoked upon the death of the grantors. We will not consider this contention because the property owners, who prevailed below, failed to assign cross-error to the chancellor's failure to rule for them on this issue. Rule 5:18.

On July 2, 1981, the Johnsons filed suit in the Circuit Court of Chesterfield County against Pendleton and Buzzard Island to repeal the Commonwealth's grant to Pendleton of the 9.74 acres. On June 28, 1982, while that suit was pending, the Johnsons executed a second lease to William A. Wells and James E. Cuddihy, Jr. The consideration for this 25-year lease ''for hunting'' was $10 and an agreement by the lessees to keep trespassers from the marsh during the term of the lease. The property was described as ''the marsh located on the Appomattox River between the high land of the [Johnsons] and the marsh claimed by Louis [sic] Pendleton, along with the marsh bordering on Johnson Creek.''

The chancellor sustained a special plea of the statute of limitations filed by Pendleton and Buzzard Island to the Johnsons' bill of complaint. We reversed that ruling and remanded the suit for further proceedings. *Johnson v. Buzzard Island Shooting Club*, 232 Va. 32, 37, 348 S.E.2d 220, 223 (1986). Upon remand, the chancellor concluded that the deed to Pendleton was void and of no effect, because the land was part of the Johnson farm and was neither an island in the river nor ''waste and unappropriated'' land, as claimed by Pendleton.

Accordingly, by a final decree dated December 2, 1986, the court confirmed the Johnsons' title to ''9.74 acres, more or less,'' as shown on an exhibit that was attached to the decree and directed to be spread upon the land records in the clerk's office. The exhibit was a plat prepared by Charles C. Townes & Associates, dated August 7, 1981, and recorded in 1986. A copy of this plat is appended to this opinion.[2]

On June 9, 1990, Shoosmith Bros., Inc., a corporation controlled by Jack A. Shoosmith, bought the entire Johnson tract, subject to the Wells' leases; the corporation then conveyed the property to Jack A. Shoosmith and Nina V. Shoosmith (collectively Shoosmith). Thereafter, Shoosmith brought this declaratory judgment proceeding in equity to determine whether the leases were valid.

At an *ore tenus* hearing, Shoosmith called witnesses in support of his claim that the leases were invalid because they did not ''contain a description of the land conveyed sufficient to identify it or . . . refer to extrinsic evidence by which the land may be identified.'' One witness was Harvey Lee Parks, the certified land surveyor who

---

[2] This one-page plat has been separated into two pages for printing.

had surveyed the Johnson farm and prepared the plat that was attached to Shoosmith's deed.

Parks, who apparently had been shown the 1980 lease and the Townes plat before trial, testified that the descriptions in those documents were insufficient to locate the 9.74-acre tract because there was no physical starting point shown on either document. Parks indicated that usually he would attempt to find a missing starting point on any previous plats on property he was surveying by questioning the surveyor who conducted that survey. However, in this instance, Parks did not question Townes, another local surveyor, about a starting point on his plat as he (Parks) would have done "[i]f we were looking for a piece of land," because "in our research we are not called upon as a rule to locate leases."

Although the Townes plat and both leases had been recorded at the time Parks had the land records searched for the necessary information to survey the Johnson farm, Parks was unaware of both the Townes plat and the second lease when he surveyed the Johnson farm. At trial, Wells' counsel showed Parks one of Townes' earlier plats of the property. Parks indicated that with the additional information contained on that plat, he might have located the 9.74-acre parcel on the ground, if the identifying stakes described in Townes' earlier plat were still in place.

Parks did not learn of the existence of the second lease until the time of his cross-examination. When shown this lease, Parks testified that he could not locate the property from its description in the lease, but he indicated that if the 9.74-acre parcel could be located on the ground, the descriptions and references in the 9.74-acre parcel and those in the second lease would have enabled him to fix the boundaries of the properties described in both Wells' leases.

Another Shoosmith witness, Ronald Lee Luck, who had hunted in this area for over 40 years, testified that he knew "exactly where [the leased property] is at."

The trial court held that Wells' leases were "ambiguous and vague so as to render them unenforceable and [that] . . . the consideration given by the defendant's [sic] for such leases [was] so inadequate as to shock the conscience of the Court." Wells appeals.

First, we consider Shoosmith's claim that the property descriptions in the leases are so inadequate as to make them unenforceable. Wells agrees that the property descriptions in the leases, standing alone, are insufficient to identify the properties, but he contends that those descriptions sufficiently refer to extrinsic evidence which, had

it been utilized, would have identified those properties. Wells relies upon our holding in *Midkiff v. Glass*, 139 Va. 218, 123 S.E. 329 (1924), in which we rejected a claim that an incomplete description of land voided a contract of sale, and indicated that " '[t]he office of description in a deed, *or other writing*, is not to identify the land, but to furnish means of identification.' " *Id.* at 225, 123 S.E. at 331 (quoting *Holley v. Curry*, 58 W.Va. 70, 73, 51 S.E. 135, 136 (1905) (emphasis not in original quote)).[3] *Cf. Sovran Bank v. Creative Ind.*, 245 Va. 93, 95-96, 425 S.E.2d 504, 508 (1993) (description of "approximately 3,088 square feet of office space" held inadequate because no reference therein to location of premises or to any means of identification by which its location could be determined).

In this case, both lease descriptions referred to the Pendleton claim, which contained the Townes plat. Because all of these documents were recorded, Shoosmith, as the purchaser of the Johnson farm, is charged with knowledge of all facts that a diligent inquiry would disclose as to the properties covered by the Pendleton claim and by the Wells' leases. *Blair v. Rorer*, 135 Va. 1, 31, 116 S.E. 767, 778, *writ of error denied*, 262 U.S. 734 (1923).

A diligent inquiry by Shoosmith into the Pendleton claim not only would have disclosed that it involved a part of the Johnson farm in Chesterfield County, but also that the claim involved the 9.74-acre parcel which was the subject of the first lease. And, utilizing the descriptions of the 9.74-acre parcel as set forth in the recorded Pendleton claim with the remaining descriptions in the second lease, it appears from Parks' testimony that the land covered by both leases might have been located had Townes, the first surveyor, been consulted. And we hold that Townes should have been consulted in order to ascertain what Townes' information, "diligently pursued, would disclose." *Id.*

Additionally, Luck, Shoosmith's witness, apparently knew "exactly" where both properties were, yet neither Shoosmith nor Parks attempted to have him point out their boundaries on the ground. Given these facts, we conclude that Shoosmith failed to make a *prima facie* case of the invalidity of the descriptions in the leases. Therefore, the chancellor erred in finding that the descriptions were invalid.

---

[3] Shoosmith attempts to distinguish *Glass* on the ground that the land covered in the contract in *Glass* was all the grantors' property at the location described in that contract, whereas Wells' leases are for parts of the Johnson farm, not the entire farm. We fail to see the distinction *if* the leases furnished sufficient means of identification.

Next, we consider Shoosmith's claim that the leases are invalid for lack of adequate consideration. However, we cannot reach this contention if Shoosmith has no standing to raise the issue, as Wells argued unsuccessfully before the chancellor. We agree with Wells that Shoosmith does not have standing.

■ Although Shoosmith's acquisition of the Johnson farm put him in privity of *estate* with Wells, it did not put him in privity of *contract* with Wells. 1 Raleigh C. Minor, *The Law of Real Property* § 408 (Frederick D.G. Ribble ed., 2d ed. 1928); *see Jones v. Dokos Enterprises, Inc.*, 233 Va. 555, 557, 357 S.E.2d 203, 204-205 (1987). And, generally, one who is not in privity of contract cannot attack the validity of the contract. *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n*, 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979). Shoosmith cites no exception to this rule that applies here, and we find none. Hence, we conclude that the chancellor erred in permitting Shoosmith to question the adequacy of the recited considerations in the leases.

Because Shoosmith failed to make a *prima facie* case of the invalidity of the descriptions in the lease, we will reverse the chancellor's decree, dismiss Shoosmith's motion for declaratory judgment, and enter final judgment in favor of Wells.

*Reversed and final judgment.*

394

| TANGENT TABLE | | |
|---|---|---|
| T | BEARING | DISTANCE |
| 1 | S 14°30'03" E | 48.73' |
| 2 | S 63° 30'17" W | 104. 37' |
| 3 | N 78°01'40" W | 74.81' |
| 4 | N 06°25'25" E | 36.94' |
| 5 | N 17° 00'13" W | 32.06' |
| 6 | N 78°30'15" W | 102.36' |

PLAT
OF
9.74± ACRES OF LAND SITUATED ON
THE APPOMATTOX RIVER
BERMUDA          DISTRICT
CHESTERFIELD  COUNTY, VIRGINIA

FOR

LOFTIN    JOHNSON

SCALE· 1"= 200'                    AUGUST   7 , 1981

CHARLES C. TOWNES &  ASSOCIATES,
CIVIL  ENGINEERS .   PLANNERS ·  LAND SURVEYORS
COLONIAL  HEIGHTS,      VIRGINIA

DRAWN  BY JDJ
COMPUTED  BY BLR
APPROVED  BY